The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. The Royal Insurance Company and/or Association Risk Management Services were the carriers on the risk.
4. Plaintiff's average weekly wage was $204.80, which yields a compensation rate of $136.53 per week.
5. Plaintiff is alleging an occupational disease that occurred on or about February 13, 1992, resulting in carpal tunnel syndrome to both hands.
6. That defendant-employer has denied liability, and the issue to be determined by the Commission is whether plaintiff developed an occupational disease, and, if so, which carrier is liable.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff had approximately a 12 year prior history of work in the textile industry as a sewing machine operator. She also had a prior four year history of work in yarn production, in a twisting department.
2. In 1989, when plaintiff was 30 years of age, she was employed by Homespun Hosiery. Her primary job was sewing the ends of socks together. This would be accomplished by pulling the knitted sock through a tube and pulling it back over the tube for placement under the sewing machine where the end of the sock would then be sewn together. She continued in this job with Homespun Hosiery until approximately June of 1990, when she was laid off.
3. On December 8, 1989, plaintiff was seen by the Health Nurse at Homespun Hosiery. At that time, she related that the prior Friday, she had "moved [her] wrist differently," and that her wrist had started to hurt and had started to swell. She had been provided an Ace bandage and over-the-counter medication and was further advised to rest the wrist as much as possible. Plaintiff had no further complaint with regard to the wrist at that time through the end of her employment at Homespun Hosiery.
4. After employment with Homespun Hosiery, plaintiff worked for North Carolina Spinning Mills (N.C. Spinning Mills) as a twister operator. She held that job for eight or nine months and had no hand problems during that period of employment.
5. Around October 1991, plaintiff was first employed at Craig Mills, working there for about four months. Her job there was to seam the toes of socks, which she described as the same job with the same type of equipment that she had earlier done at Homespun Hosiery in 1989/1990.
6. On January 6, 1992, and continuing through April 9, 1992, plaintiff was re-employed at Homespun Hosiery, again sewing the toes on socks. On February 27, 1992, she was seen by Dr. Pekman with complaints of developing symptoms for the "past few weeks." After examination, Dr. Pekman indicated that plaintiff had "diffuse tendinitis" involving both the flexor and extensor tendons of the right wrist. He injected the wrist and advised her to return if she had any further symptoms.
7. After being seen by Dr. Pekman, plaintiff's job was modified to provide sewing for four hours per day and shipping the other four hours of the day. She continued in that capacity for about three weeks, until close to the time the plant closed on April 9, 1992.
8. After plaintiff was laid off at Homespun Hosiery, she returned to N.C. Spinning Mills as a twister operator. She worked there several months, and she had no problems during that period of employment.
9. On April 7, 1993, and continuing through May 26, 1993, plaintiff was re-employed at Craig Mills. She was performing the same type of work she had performed at Homespun Hosiery and at Craig Mills in her prior employments. In this employment, she complained that she had "real bad" problems with the right wrist, but no problem with the left. She described the problems as being a lot worse than before, indicating that she worked more hours in the day than she had previously done in her earlier employment. The job she performed was done in the same manner as on previous occasions.
10. When plaintiff's symptoms reappeared, she returned to Dr. Pekman on May 27, 1993. Dr. Pekman's notes read, in pertinent part:
 Ms. Lancaster presents for evaluation of continuing symptomatology in the right hand. She had significant relief for her tendinitis and median nerve irritation following injection in February of 1992. However, with return to repetitive activity, she has developed similar findings.
Dr. Pekman recommended re-injecting the wrist and further recommended that plaintiff seek employment which was less repetitive.
11. Plaintiff returned to Dr. Pekman in August 1993 and again on December 19, 1993. On December 19, 1993 plaintiff reported that she had not been at work or done any type of repetitive activity, yet she was having worse symptoms in the right wrist.
12. She last saw Dr. Pekman on March 18, 1994. At that time, she indicated she had returned to a repetitive job for one day but was unable to perform the activity. She was "tearful" and refused to allow Dr. Pekman to perform any type of meaningful clinical examination. Dr. Pekman recommended plaintiff see a rheumatologist for further evaluation and released her from regular care. Dr. Pekman observed that her complaints in December 1993 and in March 1994 were out of proportion with the objective findings and inconsistent with his experience in treating patients who had tendinitis.
13. Plaintiff had returned for one day's work on or about March 17, 1994, at N.C. Spinning Mills. After leaving that job and after examination by Dr. Pekman, she then obtained employment at Burger King on April 21, 1994. At the time of the hearing of this case on June 7, 1994, plaintiff reported that she was able to perform the work at Burger King without limitation.
14. Plaintiff was seen by Dr. D. Dennis Payne, a rheumatologist in Hickory. He had seen her first on April 14, 1994, and again on May 4, 1994. His diagnosis was "probable myofascial pain" of the right upper extremity. When she presented to him, he found no symptoms of tendinitis. However, he did note that she had significant complaints of pain globally up the right upper extremity. An examination indicated there was no compromise of the nervous system to the right upper extremity whatsoever.
15. When Dr. Payne saw plaintiff in 1994, she had no symptoms of tendinitis.
16. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with either defendant-employer caused or significantly contributed to the development of her condition, or that plaintiff's employment with either defendant-employer placed her at an increased risk of developing the condition as compared to members of the general public not so exposed.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
Plaintiff did not develop an occupational disease due to causes and conditions characteristic of and peculiar to her employment with either defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. Consequently, plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act. N.C.G.S. 97-53 (13); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/ ____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________________________ DIANNE C. SELLERS COMMISSIONER
S/ ____________________________ BERNADINE S. BALLANCE COMMISSIONER